Good morning, Your Honors, and may it please the Court, my name is Samantha Kuhn with the Federal Public Defender's Office, and I represent Rabashi Holmes. With the Court's permission, I'd like to focus most of my time on the sentencing errors in this case, and then turn briefly to Rahimi and the Second Amendment issue toward the end. The District Court sentenced Mr. Holmes to 10 years in prison after he pled guilty to possessing firearms as a convicted felon, and that sentence was more than double his guidelines range of 46 to 57 months. And in imposing that severe upward variance, the Court committed two distinct but related sentencing errors, and these errors provide two alternative paths to remand in this case. One is that the Court imposed a substantively unreasonable upward variance sentence based on the improper factor of gang association alone, rather than any reliable defendant-specific information about Mr. Holmes' individual conduct. And then separately, the Court failed to provide any individualized explanation for the sentence, much less one that could justify the severe upward variance that it imposed. Now these issues obviously overlap, because they relate to the central problem in this case, which is that Mr. Holmes was deprived of his right to an individualized sentencing determination in proceeding, but they are two separate issues that require two separate analyses and provide two different paths to reversal. Now first addressing the substantive unreasonableness of the sentence. Under binding case law, courts have to engage in individualized assessments in every sentencing proceeding and consider every convicted person as an individual. And in determining the appropriate sentence and deciding whether a variance is appropriate, the Court has to rely on individualized case-specific reasons. The Supreme Court has made clear that things like associations and beliefs by an individual defendant are not alone grounds to provide or to make a finding of aggravating factors or warrant a variance, because those types of conduct are protected by the First Amendment. In order for an association or a belief to warrant an upward variance or to be relevant at all to sentencing, the Court has to be able to tie that association to specific individualized sentencing factors in the person's case. For example, in Pardo, this Court considered a case where gang affiliation was a factor that went into the Court's analysis for an upward variance. But in that case, the Court specifically cited gang affiliation coupled with proven violent behavior by the individual defendant. And that was what made it permissible as a sentencing factor, in addition to other factors that the Court relied on to impose a variance. In this case, the government attempted to show that to the Court. The government alleged in its motion for an upward variance that Mr. Holmes had engaged in violent conduct related to an alleged gang affiliation. But at the end of the day, the government failed to provide any reliable evidence to support those claims. The government claimed in its motion that he was an active enforcer for the gang, participated in multiple At the end of the day, when the Court asked the government to present the evidence, had an evidentiary hearing, the government failed to provide any reliable evidence to support those claims. There's three specific claims that the government alleged in its motion for upward variance that were specific to Mr. Holmes and were specific allegations of evidence of violent criminal conduct by him. One was a claim that he engaged in a very specific shooting for which surveillance footage was provided to the Court. But in reviewing that footage, it was clear that the person who was the shooter couldn't be identified, and even the testifying officer admitted that it was impossible to tell who that person was, and the Court didn't admit it. The second specific allegation about Mr. Holmes was that he was depicted in social media posts with other alleged gang members brandishing firearms to show that he posed a danger. But when that video and that image were provided to the Court and shown in court at the evidentiary hearing, again, the officer identified not that he couldn't be identified in the photos, but the officer actually said neither of the people shown were Mr. Holmes. And so those allegations were actually disproven at the evidentiary hearing. This is under plain-error standard of review, is that right? No, Your Honor. The substantive reasonableness challenge is preserved. The Defense Counsel at length objected to the Court's consideration and reliance of any non-individualized evidence or information at the hearing, objected to any upward variance, and preserved this issue. And I believe that the government's—the one issue—in the government's brief, it's a little unclear. The government suggests that maybe some aspects of the substantive reasonableness challenge are not preserved. I believe specifically related to the Court's reliance on gang association alone or gang affiliation alone. But throughout the evidentiary hearing and in filings, the Defense Counsel repeatedly objected to the Court's consideration of non-defendant-specific information, which put the Court on notice that that was improper reliance. And additionally, the District Court was clearly aware of what the objections were because the Court engaged in a discussion of the exact case law that is at issue here. And for example, I know in the reply brief we cited a number of ROA sites that provide examples of preservation, but in particular, I believe it's on 309, there was specific references to the lack of connection to Mr. Holmes. At ROA 309 to 310, the Defense Counsel even said, look, even if you've established through evidence that there's some connection between Mr. Holmes and 117 or and gang members, even if it is his client in that Instagram, there's still not evidence of any crimes that are being committed by him. So that fully put the Court on notice so that the Court could hear evidence and arguments related to whether defendant-specific conduct supported a variance. Now at the end of the day, at best, after the evidentiary hearing concluded, all the government had really shown was that Mr. Holmes had associated with two alleged gang members and that in a social media account, he had 117 as an element of his name, presumably connecting him to this alleged gang. But that's exactly the kind of association and expression that the Supreme Court has said in Dawson is not permitted to be used as an aggravating factor unless it can be tied to specific individualized information about the defendant. And nevertheless, the District Court still granted the government's motion for variance at the sentencing hearing, which took place, I forget how long, but after the evidentiary hearing. And the Court relied solely on gang affiliation alone, citing unspecified associations and beliefs of Mr. Holmes without relying on anything individualized about Mr. Holmes. And in fact, there were not, were no individualized case-specific reasons to support the variance imposed. The only information the government had provided was some amorphous connection to this alleged gang. Now, this Court's case law regarding variances and affirming upward variances makes abundantly clear how unreasonable this court sentence was and how, why this needs to be reversed. If you look at Fraga, McElwee, Winn, Beltran, Cervantes, Hudgens, and the other cases cited in the briefing, in each of those upward variance cases that were affirmed as substantively reasonable, the courts have provided very individualized case-specific reasons for why they're imposing a sentence and they're clear from the record. And so in all of those cases, the Court is not relying on gang affiliation alone. As discussed before, in Prado, for example, there was gang affiliation coupled with proven violent behavior by that individual defendant, as well as underrepresented criminal history that didn't get points. In none of those cases do the courts rely generically on presumptions of criminality based on mere association evidence. And so for that reason, the Court should vacate and remand to the prosecutor, and its upward variance sentence was not justified by any individualized reasoning. Now alternatively, if the Court determines that there were some case-specific or defendant-specific reasons underlying this Court's sentencing determination, they're clearly not apparent from the Court's explanation. And so that leads us to the second error, or the alternative path reversal, which is the plainly inadequate explanation for the Court's sentence. Again, the case law makes very clear that courts have to provide individualized, fact-specific reasons and carefully articulate the reasons that led them to conclude that a particular sentence is fair and reasonable in an individual case. And that's essential to permit this Court to review the sentence for reasonableness as directed by Booker, as the Court made clear in Mayers. Now again, if you look at the cases where this Court has affirmed sentences as procedurally sound, it's very evident from the record what the individualized, defendant-specific reasoning was. For example, even if there's a minimal explanation, courts will cite and adopt the fact-finding or the upward variance justifications that are provided in a PSR. That's, for example, in Hoffman and Clark. Or throughout the sentencing proceeding, the Court will discuss specific aggravating circumstances not accounted for by the guidelines throughout the sentencing proceeding, making it clear to this Court what the specific individualized justification was. And that, again, examples Stevenson and the 2006 Smith case. But in this case, if you look at the PSR, there was no upward variance justification provided. In fact, the PSR only had mitigating information in the variance section on ROA 425. And there was no other information throughout the record that could justify or that was provided related to a possible upward variance except in the government's motion, which was hotly contested. Many of the factual allegations were proven untrue. And the reliability and the relevance of all that information was very much disputed throughout the case. Now the government argues a couple points in its brief that this Court just simply cannot adopt. One is that the District Court's receipt of evidence and arguments, the fact that the District Court listened to information, is enough to affirm the sentence as procedurally sound. But that receipt of information provides no context or information to illuminate the District Court's actual reasoning for why it imposed a severe upward variance sentence. And then also the government cites cases talking about minimal explanations being allowed for explaining a sentence. But this Court and the Supreme Court have made clear in Gall, a conceptually simple matter. So where it's clear, for example, that somebody has been proven to engage in a series of assaults that were not accounted for in the criminal history, and that information is prevalent throughout the record, there's reliable evidence supporting it, and the Court has previously discussed it in its sentencing proceeding. Those types of reasons that are apparent from the record allow this Court to meaningfully review the sentence. But none of that exists here. And so if this Court concludes that the sentence is not relied on, or is not based on an improper factor of gang association alone, and that there is some individualized basis, it's clearly not evident from the record. This is clearly a deficient explanation, and the Court needs to vacate and remand because it's impossible to meaningfully review that sentencing decision. And so if the Court has no questions about the sentencing issues, I'll turn briefly to Rahimi. I know we provided supplemental briefing to the Court and supplemental reply briefing on Rahimi. I just want to address a few points briefly. Obviously, as argued in our opening brief, we believed that Bruin made clear or obvious that 922G1 is unconstitutional. We respect that the Court disagreed with that, and in Jones held that it was unclear that Bruin actually dictated that outcome. But Rahimi changes that, and there's a few reasons, a few key reasons why. One is that in Rahimi, the Court unequivocally rejected the government's reliance on this vague, amorphous theory that Congress can disarm anyone that it deems reasonable, broad categories of people that Congress has decided shouldn't have guns. The Supreme Court made very, very explicit that that was not a proper analysis, that that was vague, and that it was not a basis to disarm people and deprive them of their Second Amendment rights. And in Justice Thomas' dissent, he made clear that Heller's reference to felons and to law-abiding citizens, that was all dictated in that discussion. And so reliance on that language alone to suggest that 922G1 is necessarily constitutional is also improper. Again, that is one of the central tenets of much of the government's arguments throughout the litigation over this issue. Additionally, in Rahimi, the Court reaffirmed the need for relevantly similar historical analogs to justify any firearm regulation, and it reaffirmed the centrality of how and why the Second Amendment is burdened to determine whether something is relevantly similar. And so in analyzing 922G8, the Court relied on the substantive and the temporal scope of that prohibition being relevantly similar to historical analogs. It was not a permanent deprivation of firearms like 922G1 is. It only limited or it only deprived people of their firearms for the limited period that they were subject to a restraining order, and that order had to be premised on a specific individualized finding of a threat to safety, a credible threat to safety. And so that provides a good analysis and an example and shows why 922G1 is clearly unconstitutional, because the government has never put forth any historical regulation that deprived people permanently of their firearms and applied to a broad sweep of people, anyone who's ever been convicted of any offense that carries a penalty of more than a year. That's a huge category of people that doesn't have any individualized component and would encompass, obviously, large swaths of people where there would be no credible or could be no credible finding of a threat. What is our standard review on this issue? This is subject to a plain error. This was not raised in the District Court below. And so for that reason, we would ask the court to find in this scenario that 922G1 is plainly, clearly, facially unconstitutional. And for that reason, Mr. Holmes's convictions both must be reversed. Obviously, alternatively, we know the court is hearing the same issue in a preserved posture, or another panel of the court is hearing the same issue this week, and so the court may decide to hold that issue until and request further briefing as the government has suggested after that case is decided. Thank you. All right. Thank you, Ms. Kuhn. And you've saved time for rebuttal, Mr. Boydman. Good morning, Your Honor. Kevin Boydman for the United States along with Diane Coates. May it please the Court. A sentence in court's explanation is adequate if it sets forth enough to satisfy the appellate court that the District Court has considered the parties' arguments and has a reasoned basis for exercising its own legal decision-making authority. It's not necessary that the District Court indulge in robotic incantations, regardless of the variance, and it's not necessarily error if the specific reasons are not clear to this court. What is needed is that the parties have a reasoned basis for exercising its legal discretion. The District Court did that here, and it satisfied these requirements. And this is not simply a gang association sentence, as the record shows. And this began with to be more than a typical sentencing, and I don't think that's something the court should lose sight of. This is not the typical sentencing where a PSR comes out and attorneys come in and argue each side for a variance. Much more happens here. The court specifically reviewed the memoranda of counsel. It heard argument from counsel. It held an evidentiary hearing on the motion where the government was allowed to present evidence and the defense was allowed to cross-examine and counter that evidence. The District Court actively participated in that hearing, admitting some evidence, rejecting others. When it got to sentencing and it made the decision that the upward variance was appropriate, it first started by stating the rules of this court. It noted that a major variance should be supported by more significant justification. It also recited the rules, as laid out in Dawson v. Delaware in the Supreme Court in this court, that associations and beliefs may be considered when they are sufficiently related to sentencing issues and indicate a likelihood that the defendant will engage in future conduct. It also acknowledged the court's holdings that it could consider the nature of the offense and the history and characteristics of the defendant. All that is spelled out at 370 to 371. It then concluded, for these reasons, in light of the relevant facts and circumstances and the history and characteristics of the defendant, the upper variance was warranted. And if that wasn't enough, in the statement of reasons at 434 to 35, it gave more. It specified more. It checked off several boxes indicating the 3553A factors it was relying on. It noted that in this case, in reference to evidence presented to the court, it concluded that a defendant was the danger to society and likely to engage in future crimes. So this explanation is sufficient. Even if not as specific and clear as defense counsel argues, it's enough for this court on this record to understand that the district court adequately considered the party's arguments, had reason basis for exercising its own legal decision. And the record supports the court's decision here. And again, this is not just a gang association. The upper variance does not exist just because the evidence argued by the government showed that Mr. Holmes was part of a gang. It's not guilt by association. It's the conduct of the district. Agent Swann took the stand and discussed the violent feud between the Pigeon Town gang and the Hollygrove gang. He tied Holmes into the gang by showing that he used the 117 moniker on his Instagram as part of his screen name, as did others. He then showed a text between Holmes to another gang member saying, you can't trust a brother if he's been in that gang 10 plus years. Take that into what actually happened with the facts of this case. The defendant, Holmes, pled guilty to two counts of felon in possession. Well in July of 2020, he is arrested on local charges. He's arrested by local police for a felon in possession. As he bonds out, a few days later, he texts another gang member saying I need a gun. The agent explained a little longer some of the gang history and on October 20th, there's a day of retaliatory violence between the two gangs. Now no evidence is saying that Holmes was a specific part of that, but that's more of the evidence. Then on October 30th, the second count, which is the felon in possession count there, real time crime camera video, which was introduced at the hearing in which the district court got the opportunity to see, the defendant and another gang member, Williams, is outside a house carrying this AK style gun with a double clip that is taped together, which allowed for quick and easy reloading for rapid fire on video. So combine that evidence on the video with what the judge saw with the evidence of the gang violence and the evidence that he was part of the gang, you have a recidivist who had already been convicted of crimes of aggravated battery and aggravated flight from an officer and illegal carrying of gun, which the PSR indicated had poorly adjusted to prison in the past, and you combine that with the knowledge that he is in a gang that is violence and he's asking other gang members for a gun and he's walking with another gang member outside carrying a gun, an extended gun with the extended clip. It's not a hard stretch for the district court to find that in light of all of that and the associations and belief that Holmes was a danger to society and likely to commit future crimes, which is exactly what the court found in the record. But even if you take the word gang out, if you take gang association out of this, the record still supports this and you still come to the same conclusion. Because whether Mr. Holmes is in a gang or not, he is still reaching out to another person for a gun after he's been arrested, bound out, and a gun taken from him. He's looking for that. And whether you talk about gang or not, he and someone else are walking outside that place on real-time crammer with the gun. So take the word gang out of this case and you still have enough to support the upper variance because of the recidivism in this matter. Now did the court specifically say that? No. But the court, and this court has said, take a look at everything. It's not necessarily error if it's not spelled out in robotic incantations. Here the evidence presented shows and supports the court certainly could have said more, which is the case in a lot of times with district courts, but it's said enough here. Here the district court had the entire case before it, and that includes the guilty plea, the factual basis, the PSR, the evidence of an evidentiary hearing, some evidence of which was admitted and some wasn't, as well as the arguments of counsel. It recognized its obligations under the law and its limits under the law. It concluded that based on the evidence presented to it, in this case, Rabashi Holmes was a danger to society and likely to commit future crimes. This is more than enough under the precedent to support this finding, and we would hope the court, we would ask the court to affirm the sentence. Moving on to the gun section, we just, again, as you pointed out, Judge Smith, this case here, the gun challenge here to 922G1 comes on plain error. Rahimi did not address the Supreme Court's decision. Rahimi did not address 922G1. It was on a different part of it. It does not unequivocally overrule this court's precedent in Darrington and under LeMontier. That's the test under this court's determination. It has to unequivocally overrule. To the opposite, Rahimi recites case law from Heller that says the felon in possession prohibitions are presumptively lawful. So Rahimi didn't address that. It's still on plain error here, and so I think Jones still controls that question in the case of a Bruin challenge. As Opposing Counsel pointed out, this Court is hearing arguments in United States v. Diaz tomorrow. The issue is preserved. It is likely that the holding in Diaz could control that here and certainly, as Opposing Counsel mentioned, we would be happy to brief that issue. I welcome any other questions from the Court. All right. Thank you, Mr. Bortman. Thank you, Your Honors. Ms. Benford, I hope. Thank you, Your Honors. Just to address a few points raised by the government. First of all, I think it's important to reiterate that this is not the typical case. In the cases that the government has cited, in the cases the government discusses about minimal explanations being sufficient, they do not involve this type of scenario where the government provided a lengthy motion for variance making a series of factual allegations, many of which were either disproven or proven to have no reliable evidence to support that. The government basically injected large amounts of information before the Court that the defense hotly contested, much of which the district court ended up not admitting, and other information was admitted but still disputed as the reliability and relevance to Mr. Holmes. And the government appears to recognize that in its discussion. It starts to discuss what the Court might have relied on to reach its justification, what the Court might have considered about Mr. Holmes to reach its conclusion that an upward variance was warranted. But that's not appropriate here. The Court, this Court has repeatedly made clear that variances have to be commensurate with the individualized case-specific reasons provided by the district court. That's in McElwee, Deal, I believe Bernie as well. That is what we have to look to, what the Court actually relied on, not what we might be able to speculate could have been a justification or could have factored into the analysis. And it has to be commensurate with the reasons the Court, or with the actual variance that was imposed. And so we don't get to speculate about what, you know, the Court might have interpreted a video to show or what the Court might have concluded. And much of the government's information that it cites actually goes back to the same association evidence that is improper. Mr. Holmes' communication with people who are alleged to be other gang members, conversations with them, and association with this 117 moniker. And so that would be improper. And as we look at the statement of reasons from the actual district court's decision and from the sentencing hearing, which mimic each other, what the Court cited as its reason is the defendant's associations and beliefs. The Court considered the defendant's associations and beliefs that were sufficiently related to the issues at sentencing and indicated a likelihood that the defendant would engage in future criminal conduct. The Court didn't identify any individualized conduct or anything specific to Mr. Holmes that it believed was relevant. Instead, it just concluded that his associations and beliefs were sufficient. And again, identifying the 3553A factors, which is much of what the rest of the Court's explanation does, that's not sufficient. That is not an individualized case-specific reason for imposing a variance. The only specific reason that the government or that the Court gave was Mr. Holmes' association evidence. And that's clearly, it seems undisputed, that's clearly not proper, not appropriate. And so for that reason, the Court needs to remand. Even under plain-error review, if the Court believes that there is some underlying case-specific, fact-specific, defendant-specific reason for the Court's sentence, then it's not apparent from the record. There's no way for this Court to evaluate whether it's reliable, whether it was relevant to Mr. Holmes. And so for that reason, even under plain-error review, the alternative path to reversal is procedural error. If the Court has any further questions, I have the rest of my time. Thank you, Ms. Kuhn. Thank you, Your Honor. This is under submission, and the Court will take a brief recess before hearing the final two cases.